OPINION
{¶ 1} On February 1, 2001, appellee, the Richland County Children Services Board, filed a complaint for temporary custody of Mikayla Honaker born January 12, 1993, alleging the child to be dependent. Mother of the child is appellant, Traci Honaker; father is appellant, James Davis, established in May of 2001. By judgment entry filed July 31, 2001, the trial court granted temporary custody of the child to appellee. The case plan in effect for appellant mother was amended in June of 2001 to include appellant father.
 {¶ 2} On December 31, 2001, appellee filed a motion for permanent custody based upon the parents' failure to comply with the case plan. A hearing before a magistrate was held on July 10, 2002. By decision filed October 21, 2002, the magistrate recommended permanent custody of the child to appellee. Appellants filed objections to the decision. By judgment entry filed December 30, 2002, the trial court denied the objections and approved and adopted the magistrate's decision.
 {¶ 3} Appellant father filed a notice of appeal on January 27, 2003 (Case No. 03CA10) and assigned the following error:
 I {¶ 4} "The trial court erred in deciding that the child could not be placed with appellant/father in a reasonable time."
 {¶ 5} Appellant mother filed a notice of appeal on January 31, 2003 (Case No. 03CA11) and assigned the following error:
 I {¶ 6} "The court erred in granting permanent custody of the minor child to Richland County Children Services."
 {¶ 7} This matter is now before this court for consideration.
 APPELLANT FATHER {¶ 8} Appellant father claims the trial court erred in finding the child could not be placed with him in a reasonable time. We disagree.
 {¶ 9} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
 {¶ 10} R.C. 2151.414(E) sets out the factors relevant to determining permanent custody. Said section states in pertinent part as follows:
 {¶ 11} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 12} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 13} "(16) Any other factor the court considers relevant."
 {¶ 14} R.C. 2151.414(B) enables the court to grant permanent custody if the court determines by clear and convincing evidence that it is in the best interest of the child. R.C. 2151.414(D) sets out the factors relevant to determining the best interests of the child. Said section states relevant factors include, but are not limited to, the following:
 {¶ 15} "(1) The interaction and interrelationshiop of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 16} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 17} "(3) The custodial history of the child, including whether the child has been in the temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition issued under section 2151.353 or 2151.415 of the Revised Code for twelve or more months of a consecutive twenty-two month period ending on or after the effective date of this amendment;
 {¶ 18} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 19} "(5) Whether any of the factors in divisions (E)(7) to (12) of this section apply in relation to the parents and child."
 {¶ 20} Appellant father's paternity was established in May of 2001 when the child was eight years old, and the case plan was amended to include him in June of 2001. Appellant father was to attend parenting classes, obtain a drug and alcohol assessment and submit to a psychological evaluation. T. at 65-67. Although appellant father started the objectives of the case plan, he never completed them. T. at 65-68, 89-90. Jackie Victor, the current caseworker assigned to the case, met with appellant father in August of 2001 during a semi-annual review hearing. T. at 91. At that time, "he knew what he was expected to do" and had not completed any of the objectives of the case plan. Id. In addition, he did not request visitation time. T. at 93. Although appellant father saw the child at church, they did not speak or interact. T. at 40. Ms. Victor did not hear from appellant father again until March of 2002 after the child had stopped attending church because she had moved to her grandparents' home. T. at 91-92. Again, he did not request visitation time. T. at 97. Appellant father never had custody of or provided care for the child. T. at 109. Ms. Victor testified she had specific concerns about appellant father given appellee's history records and his extensive criminal arrest record on attempted rape, domestic violence, aggravated burglary and drug and alcohol charges. T. at 99-100, 107-108. Ms. Victor testified the child is now stable and happy in her current placement, and stated the child "has never wanted a relationship with her father." T. at 101-102. The child's current placement would like to adopt her. T. at 103.
 {¶ 21} Appellant father testified he ate breakfast with the child at church and she would sit beside him. T. at 114. He testified the child was "glad to see me." Id. Appellant father testified he asked for visitation but "[n]obody never gave me a opportunity. Next thing I know, she has moved, and I didn't know where she went." T. at 115. He could not remember who he had spoken to about visitations. T. at 124-125. He stated he signed up for drug and alcohol assessment on July 1, 2002, nine days prior to the hearing. T. at 117. He did not complete the psychological evaluation because "I haven't been, met the person yet." T. at 117-118. Appellee did not explain to him who to contact and "that there may be some type of financial assistance to pay for those types of things." T. at 118. Appellant father admitted to a problem with alcohol and started attending AA two weeks prior to the hearing. T. at 119.
 {¶ 22} Appellant father signed the case plan in June of 2001 and did not seriously attempt to complete the objectives until two weeks prior to the July 10, 2002 hearing. Although his paternity of the child was established in May of 2001, he did not visit with the child, and the child does not have a relationship with him. We find the trial court did not err in finding the child could not be placed with appellant father in a reasonable time.
 {¶ 23} Appellant father's assignment of error is denied.
 APPELLANT MOTHER {¶ 24} Appellant mother claims the trial court erred in granting permanent custody of the child to appellee because she received faulty notice of the permanent custody hearing and the guardian ad litem's report was filed untimely. We disagree.
 {¶ 25} R.C. 2151.414 governs procedures upon the filing of a motion for permanent custody and states the following in pertinent part at subsection (A)(1):
 {¶ 26} "The notice also shall contain a full explanation that the granting of permanent custody permanently divests the parents of their parental rights, a full explanation of their right to be represented by counsel and to have counsel appointed pursuant to Chapter 120. of the Revised Code if they are indigent, and the name and telephone number of the court employee designated by the court pursuant to section 2151.314
of the Revised Code to arrange for the prompt appointment of counsel for indigent persons."
 {¶ 27} Appellant mother claims the January 7, 2002 notice "failed to provide any explanation of the consequences of permanent custody." Appellant Mother's Brief at 5. A review of the summons indicates appellant mother was notified of the date, time and place of the hearing, identified the child at issue and noticed her of the failure to appear, right to counsel and case plan. Most importantly, the summons informed appellant mother of the following:
 {¶ 28} "A finding that your child is abused, neglected, ordependent may result in an order of Protective Supervision, Temporary Custody, Legal Custody, Planned Permanent Living Arrangement or Permanent Custody. Orders of Temporary Custody or Planned Permanent Living Arrangement remove the child from your home and legal custody until the Court terminates the Order. An order of Permanent Custody would permanently divest you of all parental rights and privileges regarding the child."
 {¶ 29} We find the summons clearly meets the requirements of R.C.2151.414. In addition, appellant mother is not new to the process as she had several other children removed from her custody.
 {¶ 30} As for the guardian ad litem report, R.C. 2151.414(C) states "[a] written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing held pursuant to division (A) of this section or section 2151.35 of the Revised Code but shall not be submitted under oath."
 {¶ 31} Appellant mother complains the guardian ad litem's report was filed on December 20, 2001 prior to the filing of the motion for permanent custody therefore, the report was not filed as part of the permanent custody proceeding. We note the guardian ad litem filed a second report on October 18, 2002, after the hearing, but before the magistrate rendered a decision. Appellant mother was aware prior to the hearing of the guardian ad litem's recommendations per the December 20, 2001 report. The guardian ad litem testified during the hearing and was subjected to cross-examination. Appellant mother did not object during or after the hearing to the lack of a report. "[A]ny claim of error arising from the guardian ad litem's failure to file a written report is waived when the argument is not raised in the trial court." See, In re Nethers
(June 5, 2000), Licking App. No. 99CA104, fn. 1, citing In re Cordell
(April 2, 1992), Cuyahoga App. Nos. 60049 and 60050. We find no prejudice to appellant mother regarding the late filing of the report.
 {¶ 32} Appellant mother's assignment of error is denied.
 {¶ 33} The judgment of the Court of Common Pleas of Richland County, Ohio, Juvenile Branch is hereby affirmed.
By Farmer, J., Gwin, P.J. and Boggins, J. concur.
Topic: permanent custody — manifest weight of the evidence.